**TRUE LIFE CHOICE, INC.; Lorraine Green, individually; John H. Heaton, individually; Accept Pregnancy Centers, Inc.; Sandra J. Adkison, individually; David F. Galloway, Jr., individually; Pregnancy Care Center; & Susan K. Stanley, individually, Plaintiffs,**

v.

**DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, of the STATE OF FLORIDA; Buddy MacKay, Lt. Governor, Secretary, Department of Health and Rehabilitative Services of the State of Florida; Paul Snead, Jr., District Administrator, Department of Health and Rehabilitative Services of the State of Florida; & Beverly J. Wheeler, Human Services Program Supervisor II, Department of Health and Rehabilitative Services of the State of Florida, Defendants.**

No. 93–509–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 29, 1994.

Mathew Duane Staver, Frederick H. Nelson, Staver & Associates, Orlando, FL, for plaintiffs.

James Albert Sawyer, Jr., Fla. Dept. of HHS, Orlando, FL, John Taylor Willett, De-Ciccio & Broussard, P.A., and Sharon L. Stedman, Sharon Lee Stedman, P.A., Orlando, FL, for defendants.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Plaintiffs seek declaratory and injunctive relief alleging that Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) are unconstitutional both facially and as applied to plaintiffs. This case was tried without a jury. At the conclusion of the trial, the court held that Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) are facially overbroad and vague, and thus, unconstitutional. The court took under advisement whether the code provisions had been unconstitutionally applied to plaintiffs. The court concludes that Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) are unconstitutional as applied to plaintiffs. In accordance with Federal Rule of Civil Procedure 52(a), the court enters this order.

### I. Findings of Fact

Plaintiffs are individuals and organizations which provide information regarding crisis pregnancies. True Life Choice, Inc. (TLC) and Accept Pregnancy Centers, Inc. (APC) are corporations operating under the laws of Florida as crisis pregnancy centers. APC is associated with the Churches of Christ. Pregnancy Care Center (PCC) is a non-profit ministry of the First Baptist Church of Leesburg and operates as a crisis pregnancy center as well. Lorraine Green (Green) and John H. Heaton (Heaton) are the Executive Director and President of TLC, respectively. Sandra J. Adkison is the Administrative Director of APC and David F. Galloway is APC's Chairman of the Board of Directors. Susan K. Stanley is the Director of PCC. In operating these centers, plaintiffs provide services such as pregnancy tests and counseling regarding abortion, including adoption as the preferred alternative to abortion.

In September 1992, Beverly Wheeler (Wheeler) a Human Services Program Supervisor for the Department of Health and Rehabilitative Services (DHRS), sent a letter to Green which stated that DHRS was investigating a complaint made against TLC and requested that TLC provide DHRS with a description of its services. The complaint against TLC alleged that TLC was involved in the unlicensed practice of the adoption process. (Doc. 94 at 10.) On or about August 31, 1992, Wheeler inspected TLC for a possible violation of unlicensed participation in the adoption process. According to Green,

during Wheeler's inspection Wheeler informed her that TLC personnel could not use the word adoption and that TLC personnel could only refer persons to the phone book in responding to questions regarding adoption. (Doc. 67 at 19–20.) Wheeler disputes that she made such statements. Green subsequently sent Wheeler a brochure which described the services provided by TLC. (Doc. 56 at 12; Doc. 67 at 22.) As a result of the complaint, TLC's Board of Directors (Board) passed a resolution which stated that TLC would comply with the intent of the DHRS adoption regulation while it continued to research and review the regulation. (Doc. 94 at 10.) Wheeler did not inform TLC of the result of the investigation of the complaint brought against TLC. No further communication occurred between TLC and DHRS until May 1993.

In a letter dated May 18, 1993, Wheeler informed TLC that DHRS had received another complaint which alleged that TLC provided adoption counseling or referrals to placement agencies or attorneys. The letter advised TLC that pursuant to Chapter 10M–24 of the Florida Administrative Code, "no person or agency, other than an intermediary as defined in Chapter 63.032 . . . shall arrange for the foster or adoptive placement of a child or engage in any adoption process, unless licensed by the department to do so." (Doc. 56, Pls.' Ex. B.) Further, the letter informed TLC that the term "adoption process" as defined under 10M–24.003(2) included, but was not limited to, the following:

> Recruitment of prospective adoptive parents; *encouraging interest in adoption or counseling of individuals who are considering release of a child or a child not yet born for the purpose of adoption as part of a plan leading to the eventual placement of a child for adoption; provision of medical care or payment of maintenance costs expenses during pregnancy; assessment and preparation of families before placement; supervision and counseling of families after placement has occurred; and services before and after finalization of an adoption.*

(Doc. 56, Pls.' Ex. B.)

DHRS again requested that TLC provide DHRS with a written description of the services TLC provided to its clients. The letter further stated that if any of the services provided are included in the definition of adoption process, TLC would be required to modify its program and notify DHRS of the changes. TLC responded to DHRS's request for information. In a letter dated June 24, 1993, DHRS informed TLC that DHRS had concluded its investigation of the complaint against TLC and that DHRS found the complaint invalid.

In addition to the complaint against TLC, complaints were made against APC and PCC. DHRS sent a similar letter dated May 18, 1993 to APC informing APC of the complaint brought against it and requesting a program description. DHRS subsequently notified APC that DHRS found the complaint invalid in a letter dated June 24, 1993.

On June 25, 1993, plaintiffs filed a complaint for injunctive and declaratory relief and motion for preliminary injunction challenging Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) implemented by DHRS. On July 16, 1993, the court entered an order granting the motion for preliminary injunction.

The parties submitted various depositions to the court for use as part of the trial record. Heaton testifies by deposition that TLC changed the program services it offered after TLC received the first complaint against it. As a former member of TLC's Board, Heaton states that Green informed the Board of Wheeler's investigation and inspection of TLC at an October 1992 Board meeting. According to Heaton, the Board asked a board member who was an attorney, Greg Holzhauer (Holzhauer), to respond to DHRS formally. Although Holzhauer complained to DHRS that the code provisions were overbroad and vague, Heaton maintains that the Board was fearful of prosecution or that DHRS would shut down TLC. According to Heaton, the Board instructed Green to inform volunteers not to discuss adoption with any client and to refer all questions regarding adoption to Green for her consideration. Heaton states that this action represented a change in TLC's policy on providing information regarding adoption.

In addition to client education on adoption, Heaton states that TLC provided support services for groups of women intending to release for adoption, including bible studies. Heaton maintains that as a result of DHRS's inquiry, TLC ceased all programs in its ministry associated with adoption. Heaton states that after the second complaint against TLC, the Board had great fear and trepidation as to what TLC could and could not do in operating the crisis pregnancy center.

## II. Conclusions of Law

### A. *Standing and Mootness*

Defendants argue that plaintiffs lack standing to bring this action because defendants have stated they will not apply the code provisions to plaintiffs, and thus, plaintiffs cannot demonstrate the threat of future injury. Defendants further assert that this action is moot because of the amendment of the relevant code provisions. Plaintiffs maintain, however, that without the preliminary injunction already entered by this court, defendants would not be precluded from enforcing the code provisions against plaintiffs. Moreover, plaintiffs argue that defendants' promises not to enforce the code against plaintiffs and to amend the relevant code provisions does not make this action moot. Thus, plaintiffs maintain that a permanent injunction is necessary to prevent application of the code.

■ Plaintiffs have standing to challenge the relevant code provisions. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973) (noting the liberalization of standing requirements to allow attacks on overly broad statutes). Further, this action is not moot as a result of the amendment process. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 288–89, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982) (stating that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice; and noting that the city's repeal of objectionable language from the ordinance would not preclude it from reenacting precisely the same provision if the lower court's

decision were vacated); *Solomon v. City of Gainesville,* 763 F.2d 1212, 1213 (11th Cir. 1985). Moreover, at the time of the trial the amendment process had not been finalized, and thus, the amended version of relevant code provisions was not in effect. Accordingly, the court will address plaintiffs' challenges to the relevant code provisions.

### B. *Facial Challenge*

Plaintiffs contend that Florida Administrative Code 10M–24.003(2) and 10M–24.004(1), operating together, constitute an unconstitutional licensing restraint on Plaintiffs' rights of free speech and the exercise of religion. Plaintiffs assert that the relevant code provisions are overbroad and vague. Defendants maintain that the code is neither overbroad nor void for vagueness.

■ The court finds that Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) are facially overbroad and vague. The code provisions are overbroad because the provisions burden plaintiffs' right to encourage women facing a crisis pregnancy to consider adoption as an alternative to abortion, and thus, the provisions intrude on plaintiffs' right to free speech. *See Grayned v. City of Rockford,* 408 U.S. 104, 114–15, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222 (1972) (noting that in an overbreadth analysis, the question becomes whether the regulation sweeps within its prohibitions what may not be punished under the First and Fourteenth amendments). Further, the provisions are vague because a person of ordinary intelligence must guess as to what is prohibited. *Id.* at 108–9, 92 S.Ct. at 2298–99; *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) (stating that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application" is unconstitutional). Florida Administrative Code 10M–24.003(2) is subject to various interpretations. On its face, it prohibits speech which encourages interest in adoption. Further, the provision forbids counseling of individuals who are considering release of a child or a child not born yet for the

purpose of adoption. Plaintiffs are unsure what activities are included within "encouraging interest in adoption" and "counseling." Defendants argue that plaintiffs take various phrases of the provision out of context and that the provision is limited by the language "as a part of a plan leading to the eventual placement of a child for adoption." Thus, defendants assert that the provision is not aimed directly at plaintiffs and their practices but that it merely applies to any agency that engages in actions which lead to the eventual placement of a child for adoption. The court disagrees with the defendants' assertion. Further, the court notes that the regulation also prohibits counseling families after placement and providing services before and after an adoption. The code does not define the phrases at issue nor does it provide standards for controlling the discretion of government officials in applying the code. Accordingly, the court finds the relevant code provisions unconstitutional. *See Grayned*, 408 U.S. at 108–9, 92 S.Ct. at 2298–99 (noting that to prevent arbitrary and discriminatory enforcement, laws must provide explicit standards for those who apply the laws).

### C. As Applied Challenge

■ Plaintiffs argue that the relevant provisions are unconstitutional as applied to plaintiffs. Defendants assert that because DHRS found the complaints invalid, the relevant code provisions have not been applied to plaintiffs. Although a dispute exists as to whether Wheeler told Green that TLC could not use the word "adoption" and that TLC could only refer persons to the phone book in responding to questions regarding adoption, this dispute is not material. The evidence shows that TLC received a letter from DHRS informing TLC of a complaint against it and that DHRS was investigating the complaint; that Wheeler inspected TLC to investigate the complaint; and that Wheeler did not inform TLC of the result of the first complaint brought against it. Wheeler's visit to TLC resulted in the appearance of DHRS applying the relevant code provisions to TLC. The evidence further shows that TLC changed its policy on providing information about adoption as a result of the complaint

brought against it. Green and Heaton's testimony shows that the Board reacted to the complaint and investigation by instructing TLC's client educators to refrain from speaking to clients about adoption and by ceasing programs involving adoption, including its bible studies.

Moreover, DHRS informed TLC of a second complaint against it and informed APC of a complaint brought against it which DHRS was investigating. The May 18, 1993 letters advised plaintiffs that if any of their services fell within the description of "adoption process," plaintiffs would have to alter their services and inform DHRS of any changes. Again, these letters emphasize the appearance that the relevant code provisions were being applied to plaintiffs. Accordingly, the court finds Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) unconstitutional as applied to plaintiffs. Because the court finds the relevant code provisions unconstitutional, the court need not address plaintiffs' other grounds challenging the constitutionality of the relevant code provisions.

In addition, because the court finds Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) unconstitutional facially and as applied to plaintiffs, the court GRANTS plaintiffs' request for a permanent injunction. Defendants, their officers, agents, employees, and others in participation with defendants, their officers, agents, and employees, are permanently enjoined from enforcing, attempting to enforce or threatening to enforce Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1).

### E. Attorney Fees and Costs

■ Plaintiffs seek attorney fees and costs pursuant to 42 U.S.C. § 1988. Section 1988 provides that in any action to enforce a provision of § 1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. *See* 42 U.S.C. § 1988; *Wilder v. Bernstein*, 965 F.2d 1196, 1201–2 (2d Cir.1992) (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 4,

*reprinted in* 1976 U.S.C.C.A.N. 5908, 5912 which stated that "[a] party seeking to enforce the rights protected by the statutes covered by [§ 1988], if successful, 'should ordinarily recover attorney's fees unless special circumstances would render such an award unjust.'"), *cert. denied sub nom., Administrator, New York City Dep't of Human Resources v. Abbott House,* 506 U.S. 954, 113 S.Ct. 410, 121 L.Ed.2d 335 (1992). To qualify as a prevailing party, plaintiffs must obtain at least some relief on the merits of their claim. *Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (stating that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.").

Defendants argue that plaintiffs cannot be considered prevailing parties even if the court rules in their favor because the relief which plaintiffs sought has been granted by administrative remedy. Defendants also assert that because the amendment of the code provision has been adequately accomplished by administrative means, any victory in favor of plaintiffs is purely technical or de minimis, and thus, plaintiffs are not entitled to attorney fees and cost under § 1988. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989) (stating that a technical victory may be so insignificant that it is insufficient to support prevailing party status).

■ The court is not persuaded by the defendants' argument that plaintiffs have not prevailed or that plaintiffs' victory is merely technical or de minimis. Further, as noted earlier, defendants admitted that the amendment process had not been finalized and that the amended code provisions were not in effect. Because the court finds that Florida Administrative Code 10M–24.003(2) and 10M–24.004(1) are unconstitutional both facially and as applied to plaintiffs, attorney fees and costs are permissible under § 1988. The court notes that if DHRS had acted quicker and with more good faith, DHRS could have reduced the attorney fees in-volved in this action. Accordingly, the court GRANTS plaintiffs reasonable attorney fees and costs, and directs plaintiffs to submit to the court the necessary papers calculating such attorney fees and costs.

### III.  Conclusion

The court finds that Florida Administrative Code provisions 10M–24.003(2) and 10M–24.004(1) are unconstitutional facially and as applied to plaintiffs. Accordingly the court GRANTS plaintiffs' request for a permanent injunction. Further, the court GRANTS attorney fees and costs pursuant to § 1988 in favor of plaintiffs.

It is SO ORDERED.